## Young's Estate.     Miller's Appeal.

65    101
137   109
65    101
d181  381

1. The Supreme Court will take no notice of the reasoning of a judge in delivering an opinion, if his result be correct; the rule is different in charging a jury.

2. The only rule as to proof to fix liability on a husband for his wife's money received by him, is that it must be sufficient to satisfy the tribunal that it preponderates over all theories to the contrary.

3. When the prima facies is that the money was received for the wife's use, the burden is on the husband to show the contrary.

4. An executor in the wife's presence delivered to her husband her distributive share in money and securities, he collected the securities. *Held*, to be constructive evidence that he intended to use the *money* as his own.

5. The silence of a wife at the time her husband receives her money is not sufficient to raise the presumption of a gift to him.

6. When the husband receives a wife's money the presumption is that he receives it as hers.

March 22d 1870.     Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, JJ.     READ, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court · of *Lehigh county* : No. 413, of January Term 1870 : In the distribution of the estate of John Young, deceased.

The decedent died in August 1865.     William H. Newhard, his executor, having settled his account, Thomas B. Metzgar, Esq., was appointed auditor to make distribution.     Sarah Young, the widow of the decedent, claimed to receive from the estate the sum of $3047.75, her share of the estate of her father, John A. Wieder, deceased, which she alleged her husband, John Young, had received.

From the testimony before the auditor it appeared that the distributees of the estate of Wieder had been called together by his executor to receive their several shares.     Mrs. Young's share was $3047.75 ; part of it was settled in money and part in notes due the estate ; one was Victor Blumer's for $676 ; another, Henry Storch's, for $506.50 ; another, George Brobst's, for $424. The notes and cash were handed to John Young by the executor. Mrs. Young was present with her husband when the cash and notes were handed over.     A release to the executor was executed by Mrs. Young and her husband.     The executor testified : " The notes were handed over first and the money afterwards ; John Young transacted the business ; I cannot tell which of them, Mrs. Young or Mr. Young, took the money ; John Young counted the money and handled it ; I did not see him give it to her."

There was evidence that Blumer's and Storch's notes had been paid to John Young.

S. Wieder testified : " John Young received Mrs. Young's share of the estate ; it was paid partly in money and partly in bonds or notes ; Mrs. Young was present ; the heirs were all there ; I saw John

[Young's Estate.]

Young take the money; I think Mrs. Young signed the release; they sat down around a table, all of them; Mr. Gable counted the money out and gave it to them in their shares; I cannot say that I saw Mrs. Young touch the money; all I know is, that Gable counted the money out; that John Young counted it, and so did all the other heirs; John Young put the money in his pocket, so much as I know; Mrs. Young was there, but I don't know whether she was sitting at the table; I cannot recollect whether she was in the room at the time the money was counted; I recollect John Young putting it in his pocket-book."

The auditor reported: "The next and last subject of controversy upon which the auditor is asked to decide is the one by far of most significance and importance. Sarah Young, the widow of the decedent, and a legatee under the will, by counsel appeared before the auditor and claims that the sum of $3047.75 be repaid to her out of the estate of the decedent, because, as she alleges, and in my judgment proves, that amount was received by John Young, her husband, from the estate of her father, John Adam Wieder, subsequent to the Act of 1848, entitled the 'Married Woman's Act.' * * * This claim was objected to on the part of Mrs. Miller, one of the children of John Young, deceased, she being represented by counsel. After having carefully weighed the evidence, and after having examined the authorities on the subject, I have come to the conclusion to give Mrs. Young the aforesaid sum of $3047.75 out of the assets of the estate of the said decedent, with interest from the date of his death to the filing of this report." * * *

The court (Longaker, P. J.) confirmed the report of the auditor, saying, amongst other things :—

* * * "The testimony of Gable and Wieder raises a reasonable presumption that John Young received from the executor of John Adam Wieder the patrimony of his wife. When we consider with this testimony the positive fact that the bond against Victor Blumer, and the note against Henry Storch were paid to John Young, and that he also received as part of this patrimony the sealed note against George Brobst, we have clear and satisfactory proof that to this extent he received the moneys due his wife. [If he received the part paid in securities, the foregoing testimony considered with the fact that it has not been shown, nor is it pretended, that the decedent's wife ever was possessed of a separate estate, having in any manner invested or expended her patrimony, it becomes equally clear and satisfactory that he received the whole of his wife's patrimony.] He having received it, the law will compel his estate to account for it, unless there be proof sufficient to warrant a conclusion that he received it as a gift from his wife. The burden of proof of a gift lies upon the estate." * *

Wm. H. Miller and Jane Alice his wife, she being a distributee

[Young's Estate.]

of the estate of John Young, appealed to the Supreme Court, and assigned for error the decree of the Orphans' Court. One of the specifications was the part of the judge's opinion included in brackets.

*E. Harvey*, for appellants.—The finding of an auditor is not conclusive when error is shown: Chew's Appeal, 9 Wright 228; Stewart v. Bowen, 13 Id. 245; Kisterbock's Appeal, 1 P. F. Smith 486; Hause v. Gilger, 2 Id. 413. If a wife permits her husband to receive her separate estate, it is evidence of a gift to him: Naglee v. Ingersoll, 7 Barr 204; Towers v. Hagner, 3 Whart. 57; McGlinsey's Appeal, 14 S. & R. 64; Methodist Episcopal Church v. Jacques, 3 Johns. Ch. R. 113; Hinney v. Phillips, 14 Wright 385; Mann's Appeal, Id. 375; Hoover v. Samaritan Soc., 4 Whart. 453.

*Erdman & Oliver*, for Sarah Young, appellee.—Money of the wife's estate received by the husband is presumed to have been received for her: Johnston v. Johnston, 7 Casey 450. The burden of proving a gift is on the husband: Hinney v. Phillips, 14 Wright 382; Grabill v. Moyer, 9 Id. 530.

The opinion of the court was delivered, May 5th 1870, by

THOMPSON, C. J.—The auditor, in this case, found that Mrs. Young's share in her father's estate was actually received by her husband from the executors of that estate in her presence, partly in cash and partly in obligations on third parties, and that his (the husband's estate) is debtor to her for the amount.

The finding was excepted to by Mrs. Miller and husband, the appellants, the former being a daughter of the decedent, on the ground of the insufficiency of proof to charge the estate so far as the cash was concerned. The auditor's report was carefully reviewed by the learned President of the Orphans' Court upon the law and facts of the exception, and confirmed. It is now before us substantially on the same exception. We take no notice of the language of the judge in a case like this in reasoning to results, provided his results are right. The last proves that he has not misled himself, even if portions of what he said were erroneous. The rule would be different if he had been charging a jury on a matter material to the issue. The exception on this ground is dismissed.

No distinct error in regard to the evidence, or inferences from it on part of the auditor, have been shown. The heirs and legatees of John A. Wieder's estate, amongst whom were John Young and his wife, the appellee, were called together by the executors to receive their distributive shares of the estate. It was very clearly proved that Young handled, received and took possession

of the share of his wife in money and obligations. "He did the business," says one witness, and "put the money into his pocket," say others, and joined in the receipt and release of the share of his wife to the executors.

It is argued that this was not sufficient to charge him with the money. It is not possible to lay down any definite standard of proof necessary to fix liability on the husband or his estate, for money or property confessedly of the wife received by him. The only rule on the subject is, it must be sufficient to satisfy the tribunal trying the question that it, preponderates over all theories to the contrary. Of course, where that is the prima facies of a case, the other side is called on to show, in some way or other, that justice and law require a different result. We think, as did the auditor and court, that the direct and constructive proof on part of the appellee in this case established a prima facie case for her. A portion of the direct I have given. The constructive was the receipt by the husband of obligations in part payment of his wife's portion, and his collection and use of the money arising therefrom, a fact not denied in the contest. It certainly must be regarded as a circumstance going to show the husband's intention in his reception of the money, namely, to use it as his own. Both the obligations and money were received by him at the same moment. The retention of the one and their proceeds afterwards, in the absence of anything to the contrary, was a strong ground for the inference that both were received with the same intent, and to be used in the same way, viz., put into his estate, and to be accounted for to his wife. Not a *scintilla* of testimony was offered by those who objected to Mrs. Young as a creditor of her husband, to relieve his estate from the prima facie case made by the facts, and the legitimate inferences from them, excepting that the wife did not at the moment object to her husband taking possession of the money and obligations. But no case, that I can think of, has gone so far as to divest a wife of her estate by silence, unaided by any other fact or circumstance, by an inference of a gift to him.

If this were so, very many wives, I apprehend, would find the Act of 1848, intended to protect married women in the enjoyment of their individual and separate estates, a broken reed. It is rather too much to expect or require a timid, modest woman, especially in the presence of strangers, as was the case here, to cast doubts of the fair-dealing and honesty, or want of confidence in her husband, by claiming to have the share belonging to her placed in her own hands and possession. If she refrains from this her title is not gone. The husband is presumed to know the law and his duty, and if he does not restore to her all that is hers, it must be presumed he intends what the law requires of him, that he will stand as her debtor for the amount received, and that his

estate will so answer. He has in law no more title to her separate estate, or to the use and conversion of it to his own benefit since 1848, than he has to the property and estate of any stranger, without her actual consent. When he receives her money, the legal presumption is that he receives it solely for her use, and consequently must account for it by showing that it was returned or expended for her use at her request, or that he received it as a gift from his wife: Johnston *v.* Johnston, 7 Casey 450, Grabill *v.* Moyer, 9 Wright 382, prove this, as do other cases falling in the same track. As already said, all this was wanting in exoneration of John Young's estate, and we think there was no error below in so holding. It would seem, almost, as if the appellants moved in this matter with little confidence. They did not, as they might have done, call the widow before the auditor, and compel her to purge herself on oath in regard to her claim; or they might have had an issue to try disputed facts, if they really felt that there were good grounds, and could aver it on oath, but did not ask it. Nothing of this was done. Seeing that the appellees' case was found by the auditor and court to be primâ facie good on the facts and law, and as the former were in no way impeached or contradicted, we see no error in the conclusion arrived at in the court below.

Decree affirmed, and appeal dismissed at the costs of the appellants.