## Estate of Isaac Martin, deceased.   Appeal of Isaac J. Martin.

*Husband and wife—Evidence—Decedent's estate.*

Where a husband buys real estate and takes title in his own name, the legal presumption is that he furnished the money, and where his widow claims that the property was bought with money loaned to him by her from her separate estate, the burden of establishing the loan and of overcoming the presumption in favor of her husband is on her; and where it appears that she had no separate estate, it cannot be done by merely proving the husband's declarations which are wanting in details, dates and amounts: Young's Est., 65 Pa. 101, distinguished.

Argued April 13, 1897. Appeal, No. 37, Jan. T., 1897, by Isaac J. Martin, from decree of O. C. Phila. Co., Jan. T., 1896, No. 382, sustaining exceptions to auditor's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to the report of William H. Staake, Esq., auditor. The facts appear by the opinion of the Supreme Court.

*Error assigned* was in sustaining exceptions to auditor's report.

*Charles H. Downing*, with him *Walton & Andre*, for appellant.—The report of the auditor was set aside by the court on facts presumed from contradictory and hearsay evidence. The court overlooked the rule requiring direct and positive proof of a claim against a decedent's estate when the claimant is the administratrix.

*William F. Meyers*, for appellee.—The auditor's findings in a case like this are not conclusive: McConomy v. Reed, 152 Pa. 42; Phillip's App., 68 Pa. 130.

The rule of law applicable in such case is that the mere fact of the reception of the wife's money by her husband makes him her debtor, and it requires no affirmative proof by the wife that he received it as a loan and not as a gift. On the contrary, if it is alleged afterwards, whether by the husband's heirs or by his creditors, that the money was received as a gift, and not as a loan, the burden is upon those who make such allegation to prove it: Wormley's Est., 137 Pa. 101; Hamill's App., 88 Pa. 363; Young's Est., 65 Pa. 101; Gracie's Estate, 158 Pa. 521; Sawtelle's App., 84 Pa. 306.

OPINION BY MR. JUSTICE WILLIAMS, May 24, 1897:

Jennie Martin, the claimant, became the third wife of the decedent in 1862. She does not appear at that time to have had any separate estate or any means for acquiring one. She received occasional gifts from one Henry Seybert, the amount or frequency of which no one appears to have known, except herself. Seybert died in 1883, leaving her an annuity of $800 per annum. Martin appears to have been at work as a machinist and in possession of good health at the time of his marriage. This state of things continued for several years and until he was attacked by rheumatism. He then went into the grocery business for some years, and at the time of his death had been keeping a small cigar, tobacco and candy store. Neither Martin nor his wife seem ever to have kept a bank account or to have entered their cash transactions in books of their own. In 1868 Martin purchased a property at 16th and Sybert streets for $1,400, having the title made to himself and his wife. It is now said by her counsel in the paper-book before us that she holds the property as her own, by virtue of her survivorship. The legal

presumption arising from these facts is that Martin paid for the property and had the deed made in such manner that the entire title should vest in his wife, should she survive him. In 1874, he purchased a house and lot on Jefferson street for $2,200, having the deed made to himself; he afterwards paid $800 to extinguish ground rent upon it. In 1883 he bought a house and lot on Poplar street for $2,600, subject to an incumbrance, which he subsequently paid, amounting to $2,500 more. The legal presumption arising from these transactions is that the money was furnished by the purchaser. The claimant alleges that all the money so paid by her husband was lent to him by her at various times, running through a period of many years. The burden of overcoming the presumption in favor of her husband and establishing the loan or series of loans, was on her. Nor was she relieved in any manner from this burden by the circumstances under which the validity of her claim was raised in the court below. Her husband died in March, 1896. Letters of administration on his estate were issued to her on the ninth day of March. Five days thereafter, she appeared in the orphans' court to apply for leave to sell the real estate of which he died seized for the payment of debts. The schedule of debts showed a debt of $12,000 due to herself. The only other debts consisted of the undertaker's bill and a few small items aggregating about $170. It is plain that the only possible reason for her application was the assertion of her own claim which would require the sale of her husband's entire estate. An order of sale was granted. Heirs of Martin by a former marriage, hearing of this proceeding, came into court, to assert that the alleged debt had no existence, and asked a rescission of the order of sale. An auditor was appointed to hear the testimony, investigate the facts, and advise the court about the existence and amount of the debt. He heard the testimony and reported adversely to the claimant. Exceptions were filed to the report and, upon hearing, the orphans' court overruled the auditor and adjusted the amount of the debt for money borrowed by the decedent from his wife at the sum of $8,100. They therefore renewed the order of sale. The sum of $8,100 is the aggregate of the purchase money and the incumbrances upon both the Jefferson and the Poplar street properties, and the orphans' court have found that the evidence is sufficient to over-

come the prima facies of these purchases and to establish the fact that this money was borrowed by Martin from his wife, and that it was money which, as between themselves, was her separate estate.

We have examined the evidence to see whether these findings were fairly supported by it and agree with the auditor that they are not. It is very unsatisfactory in all respects. It consists chiefly of the testimony of Mrs. Winters, who had no definite knowledge about the alleged loans, and who testified from information derived from the claimant; and of the testimony of Dr. Bewtel relating to some declarations made by the decedent in regard to the purchase of the Poplar street house. These declarations would tend to corroborate the claimant's position, so far as the purchase money of this house is concerned, which was $2,600. But he had no personal knowledge that a loan was ever made by Mrs. Martin to her husband. There were also two or three witnesses who gave an opinion that Martin had made no money, either as a machinist or a grocer, and therefore could not have paid the purchase money on these properties. From this conclusion they drew another, that inasmuch as the purchase money was paid it must have been paid out of money given by Seybert from time to time to Mrs. Martin and loaned by her to her husband. There is however no proof whatever upon which these conclusions can be sustained. The evidence affords at best a foundation for a plausible conjecture and this is the utmost that can be affirmed of it. She has failed to overcome the prima facies in favor of her husband unless it may be as to the original purchase money of the Poplar street house, and the decree appealed from must be reversed. Had the prima facies been in favor of this claim, the duty of rebutting it would have devolved upon the objectors. The situation was exactly the opposite. Her duty was to overcome the effect of circumstances which, unexplained, made a case against her. Young's Estate, 65 Pa. 101, cited and relied on by the appellee, is not in point. In that case the existence of the separate estate of the wife, its amount, and its payment to the husband were conceded. The only question raised was whether in the absence of positive proof upon the subject, the money so received by the husband should be presumed to be a gift or a loan. We held the presumption to be that the money was received as a loan and that

the burden of showing the contrary rested on him who asserted it. In this case it clearly appeared that the claimant had no definite separate estate. There was no evidence that any of her money went into his hands, except that of his own declarations which were wanting in details and furnished neither dates nor amounts. The effort was therefore to charge him with payments made by himself upon purchases of real estate, the deeds for which were made to himself, by the testimony of witnesses who really know very little about it. The decree appealed from cannot be sustained. It is therefore reversed, except as to $2,600, and a procedendo is awarded.

Opportunity should be afforded the heirs to pay this sum, if they so desire, to retain the real estate.