Derry Council No. 40, Jr., Order United American Mechanics of Hummelstown, Pennsylvania, v. The State Council of Pennsylvania, Junior Order United American Mechanics, et al.

*Corporation—Corporate meetings—Beneficial associations.*

The rule that a corporation must perform its corporate acts within the state or sovereignty that gave it life, does not apply to the action of a beneficial association incorporated in Pennsylvania, and having subordinate councils and members throughout the United States, in levying a per capita tax on its members at a corporate meeting held outside the limits of Pennsylvania, such a tax being within the corporate powers and necessary to provide revenue upon which the existence of the corporation depended.

*Corporations—Beneficial association—Junior Order of the United American Mechanics of the United States of North America.*

Under the constitution and national laws for the government of the Junior Order of the United American Mechanics, the National Council has a right to levy a per capita tax upon every member of the order, to provide revenue for the maintenance of the order, and the Pennsylvania State Council has no power to resist the levy of such tax.

Argued May 28, 1900.  Appeal, No. 14, May T., 1900, by defendants, from decree of C. P. Dauphin Co., No. 260, in equity, in case of Derry Council No. 40, Jr., Order United American Mechanics of Hummelstown, Pennsylvania, by its Trustees, H. Wells Buser, George Spidle and Stauffer Stephenson, *v.* The State Council of Pennsylvania, Junior Order United American Mechanics, and the National Council of the Junior Order United American Mechanics of the United States of North America.  Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.  Reversed.

Bill in equity to restrain the collection of a per capita tax levied upon the members of an incorporated beneficial society.

The facts are fully stated in the opinion of the Supreme Court.

The court entered a decree enjoining the defendants from levying a per capita tax.

*Error assigned* amongst others was the decree of the court.

*W. U. Hensel,* with him *A. D. Wilkin* and *A. M. DeHaven,* for appellants.—The adoption of the national laws of 1890, at Minneapolis, was in accordance with the laws governing the Order, and was not in violation of the charter nor ultra vires : Lumbard v. Aldrich, 8 N. H. 31 ; McCall v. Byram Mfg. Co., 6 Conn. 428 ; Hutchins v. New England Coal Mining Co., 4 Allen (Mass.), 580 ; Arms v. Conant, 36 Vt. 744 ; Stoney v. The American Life Ins. Co., 11 Paige (N. Y.), 635 ; Bard v. Poole, 12 N. Y. 495 ; Smith v. Alvord, 63 Barb. (N. Y.) 415 ; Merrick v. Van Santvoord, 34 N. Y. 208 ; Connecticut Mut. Life Ins. Co. v. Cross, 18 Wis. 109 ; Galveston R. R. v. Cowdrey, 11 Wall. (U. S.) 459 ; Reichwald v. Commercial Hotel Co., 106 Ill. 439 ; Saltmarsh v. Spalding, 147 Mass. 224 ; Newburg Petroleum Co. v. Weare, 27 Ohio, 343.

The National Council is not such a corporation as is subject to the ordinary rule of judicial construction on extraterritorial acts : Christian Union v. Yount, 101 U. S. 352 ; Mann Mining Co.'s Case, 2 Chester Co. Rep. 90 ; Hussey v. Gallagher, 61 Ga. 86 ; Kerr on Injunctions (3d ed.), chap. 23.

The complainants are estopped by their previous acts from objecting to the change in the method of levying the per capita tax, on the ground that it was effected at a meeting held outside of the state: Wood v. Boney, 21 Atl. Repr. 574 ; Handley v. Stutz, 139 U. S. 417.

The maintenance of the central office at Philadelphia and the transaction of all business there, is a sufficient compliance with the requirements of the charter, that the place of business of the corporation shall be Philadelphia : Railroad Companies v. Keokuk Bridge Co., 131 U. S. 371 ; Central Transportation Co. v. Pullman Car Co., 139 U. S. 24 ; McCormick v. Market Bank, 165 U. S. 538.

The act of 1865 gives the National Council, a majority of whose members are nonresidents, express authority to transact business outside the state of Pennsylvania.

*John E. Fox*, with him *W. A. Pike* and *M. W. Jacobs*, for appellees.—The Minneapolis laws are invalid: Ohio & Miss. R. R. Co. v. Wheeler, 1 Black, 286 ; Allegheny County v. Cleveland, etc., R. R., 51 Pa. 228 ; Matthews v. Trustees, 7 Phila. 270 ; Com. v. Standard Oil Co., 101 Pa. 119 ; Miller v. Ewer, 27 Me. 509 ; Smith v. Silver Valley Mining Co., 64 Md. 85 ; Aspinwall v. O. & M. R. R. Co., 20 Ind. 492 ; Ormsby v. Vt. Cooper Mining Co., 56 N. Y. 623 ; Franco-Texan Land Co. v. Laigle, 59 Tex. 339 ; Duke v. Taylor, 37 Fla. 64 ; Camp v. Byrne, 41 Mo. 52 ; Hodson v. Duluth, Huron & Denver R. R. Co., 46 Minn. 454 ; Freeman v. Machias, 38 Me. 343 ; Hiles v. Parrish, 14 N. J. Eq. 380 ; Green's Brice's Ultra Vires, p. 442 ; Thompson on Corporations, sec. 694.

The act of 1865 has no application: Arthur v. Morrison, 96 U. S. 108 ; Esterley's App., 54 Pa. 192.

The proceedings to collect the per capita tax from councils subordinate to the state council are not warranted by the Minneapolis legislation: Sperry's App., 116 Pa. 391 ; Com. v. Bank of Pennsylvania, 3 W. & S. 184 ; Baptist Congregation

v. Scannel, 3 Grant, 48; Sarver's App., 81* Pa. 183; Failey v. Stockwell, 2 Dist. Repr. 197; Tunis v. H., M. & F. R. R. Co., 149 Pa. 70; Leech v. Harris, 2 Brewst. 571; Lowry v. Stotzer, 7 Phila. 397; Potter v. Search, 7 Phila. 443; Brush Electric Co.'s App., 114 Pa. 574; Johnston v. Price, 172 Pa. 427; Conemaugh Gas Co. v. Jackson Farm Gas Co., 186 Pa. 443.

OPINION BY MR. JUSTICE BROWN, October 8, 1900:

The injunction in this case was awarded solely on the ground that the action of the National Council of the Junior Order of United American Mechanics of the United States of North America, in levying the per capita tax at Minneapolis in 1899, was null and void. The court below so concluded, because, in its judgment, the levying of the tax was a corporate act by the body, which, having been incorporated in this state under our corporation act, had no power to do a corporate thing—that is, something relating to or concerning its existence—beyond the limits of the commonwealth that had created it. It is true, as a general proposition, that a corporation can have no legal existence beyond the bounds of the sovereignty that gave it life, and must dwell within the place of its creation: Ohio & Miss. R. R. Co. v. Wheeler, 1 Black, 286; County of Allegheny v. Cleveland & Pittsburg R. R, Co., 51 Pa. 228; Commonwealth v. Standard Oil Co., 101 Pa. 119. It is equally true, as a general rule, that, as the corporation cannot exist beyond the limits of the sovereignty from which it springs, its strictly corporate acts must be performed within such limits: Miller v. Ewer, 27 Me. 509; Smith v. Silver Valley Mining Co., 64 Md. 85; Green's Brice's Ultra Vires, p. 442, note *a;* Thompson on Corporations, sec. 694. What was done by the National Council at Minneapolis in 1899 to provide for the collection and payment of the per capita tax was, as held by the court below, a corporate act of the body. In levying this tax, it was providing for revenue upon which its existence may have depended. If it had no right to exist within another sovereignty and perform such corporate acts as are complained of, the decree before us for review ought not to be disturbed; but, if it is not such a corporate body as should be subject to the general rule relating to the place of the existence of a corporation and the limits within which all strictly corporate acts must be performed, the court

below erred in awarding the injunction, unless for other good cause it should have issued.

The National Council of the Junior Order of United American Mechanics of the United States of North America was incorporated by the court of common pleas, No. 3, of Philadelphia, on April 10, 1893, under the provisions of the act of April 29, 1874, and its supplements, and is a corporation designated by the statute as " not for profit." Nearly a quarter of a century before its incorporation, it had been organized, having been composed of the state councils of Pennsylvania, New Jersey and Delaware. Now it is composed of councils and members of thirty-two states and territories. The purposes of the Order, as an unincorporated society, continued to be the same after its incorporation, and were beneficial and protective, and " to maintain and promote the interests of the Americans, and shield them from the depressing effects of foreign competition; to establish a sick and general fund; to maintain the public school system of the United States and to prevent sectarian interference therewith; to uphold the reading of the Holy Bible therein; to assist the American youth in obtaining employment, and to encourage them in business; to afford relief to the members and their families in case of sickness, and to defray the expenses of their funerals, or such other cases of distress as shall be defined by the by-laws." It exists as a great family, to help and protect its members. It is of a social and not of a business character. It has no capital stock, and the making of money is not its object. Its aims and membership, as declared by its charter, are national, confined to no state or locality. A majority of its members and councils are nonresidents of Pennsylvania. Must such an order, such an incorporated body, as diffusive as the limits of the nation, exist and act only within the borders of the sovereignty that created it; or should it, a purely beneficial organization, with its broad aims and objects and its brotherhood extending from ocean to ocean, be permitted, from time to time, to act at such places beyond this commonwealth, as may be selected for the manifest convenience and welfare of its members? If the reasons of the general rule requiring a corporation to perform its corporate acts within the state or sovereignty that gave it life, extend to this order, it was properly enforced by the court below; but,

VOL. CXCVII—27

if they do not apply, the rule itself should not. Cessante ratione legis, cessat ipsa lex. These reasons must be, as in any ultra vires act by a corporation: " 1. The interest of the public, that the corporation shall not transcend the powers granted. 2. The interest of the stockholders, that the capital shall not be subjected to the risk of enterprises not contemplated by the charter, and therefore not authorized by the stockholders in subscribing for the stock. 3. The obligation of every one, entering into a contract with the corporation, to take notice of the legal limits of its powers : " Railway Companies v. Keokuk Bridge Co., 131 U. S. 371. The reason of the rule " does not lie in the imaginative notion that a corporation ' must dwell in the place of its creation, and cannot migrate to another sovereignty ; ' but rather in the hardship and fraud it might entail on shareholders to permit corporate meetings to be held outside the state. Accordingly, there seems to be no reason for holding invalid, acts done at corporate meetings assembled without the state, if all the shareholders acquiesce in the holding of such meetings : " Taylor on Private Corporations, part 5, page 281.

In levying the tax, it cannot be pretended that this Order transcended any corporate power granted ; and the public, which cannot fairly be said to have any interest in the powers possessed by this family Order, most certainly had none as to where they were exercised. It could make no manner of difference to the public whether the tax was levied in Philadelphia or Minneapolis. The public were not affected. The Order did not deal with them, but only with its own members, its own private family. It had no stockholders to be subjected to risk, hardship or fraud, and it did not undertake to enter into any contract. Its relations with the members of this complaining council had already been established, and presumably existed for years. The levying of the tax was simply providing a revenue for the continued existence of the organization, of which these complainants were practically component parts. No reason, therefore, exists for the application to the case before us of the rule as to corporate acts beyond the limits of the state creating the body, and the appellants justly ask us to exempt them from it. Any other view would impel us to the conclusion that all religious, literary, patriotic or beneficial

societies of a national character, scope or origin, which have been incorporated by the courts, by acts of general assembly, or, since 1874, under the general corporation laws of Pennsylvania, were incapable of holding their meetings, transacting their business and adopting rules and laws at places outside the state.   It is a matter of common knowledge that religious denominations and beneficial and charitable orders hold their annual meetings, from year to year, at different points throughout the Union, from Boston to San Francisco, and from Minneapolis to New Orleans, as the pleasure and convenience of the members or the welfare of the society suggest.   To select at random from the pamphlet laws: The General Assembly of the Presbyterian Church in America was incorporated by act of assembly in Pennsylvania in 1799; The Presbyterian Historical Society, in 1857, P. L. 1858, p. 535, with the object of collecting and preserving the materials, and to promote the knowledge of the history of the Presbyterian Church in the United States of America, and unlimited in the territory from which its membership was drawn; The German Eldership of the Church of God, in 1860, P. L. 126 ; The Board of Foreign Missions of the United Presbyterian Church of North America, in 1866, P. L. 861; The Lutheran Mission and Church Extension Society in 1871, P. L. 99, composed of citizens of Pennsylvania and adjacent states ; The Board of Education of the Presbyterian Church in the United States of America, in 1871, P. L. 791 ; The Church Extension Society of the Methodist Episcopal Church, in 1865, P. L. 807 ; The General Eldership of the Church of God in North America, in 1867, P. L. 1295 ; The General Assembly of the Church of Christ in America in 1866, P. L. 1867, Appendix, p. 1418 ; The General Board of Directors for Orphans' Home of the Reformed Church, in 1866, P. L. 1867, Appendix, p. 1428 ; The Board of Foreign Missions of the General Synod of the Evangelical Lutheran Church in the United States of America, in 1872, P. L. 623 ; The General Assembly of the United Presbyterian Church of North America, in 1859, P. L. 482.   To these might be added, almost indefinitely, a long line of like societies, incorporated by the courts of Pennsylvania before and since the act of 1874, extensive as the country in the dispersion of their membership and the exercise of their corporate powers upon their corporate objects.

They have, without question by any one, changed their places of meeting and acted in their corporate capacities from year to year, without regard to state lines or to the precise place of their incorporation. It would be a most ·ruthless exercise of judicial power, as well as a stretch of judicial authority, to declare all their acts and proceedings beyond our borders null and void at the instance of some complaining or aggrieved member or congregation, who excepts to a new mode of paying dues, because adopted outside the state. In levying the tax at Minneapolis, no law of Minnesota was violated and no statute of our own commonwealth was contravened. Neither state is complaining, no power of the corporation was transcended, and, for the reasons given, Derry Council cannot complain that the National Council, beyond our borders, did what it certainly could have done within them, for the continuance of its existence.

But the appellees insist that, if the decree is correct, it ought not to be reversed because the court gave a wrong reason for making it. We will not reverse it if it is correct, though the reason was wrong: Powell's Estate, 138 Pa. 322. We have nothing to do with reasons. The appeal is not from them, but from the decree, which may do harm. It is, therefore, contended that, even if the proceedings of the Minneapolis convention were not ultra vires, and the constitution and by-laws there adopted for the government of this Order are valid and binding on the members and subordinate councils, no liability for the payment or collection of the per capita tax is imposed upon the subordinate councils, and no power exists in the National Council to deal with subordinate councils or members for their nonpayment of it, and, if the State Councils make no provisions for its collection and payment, the National Council is powerless. If this position was taken in the court below, it is not referred to in the opinion of the learned trial judge who heard the case. It is, however, strongly pressed here on behalf of the appellees and deserves our consideration, for corporations of this kind must proceed in strict accordance with their own laws. An examination of the constitution and national laws for the government of the Junior Order of the United American Mechanics, adopted in Minneapolis in June, 1899, the adoption of which we have held to be valid and bind-

ing on the Order, shows that the body which adopted it was the supreme governing power and that the national constitution and laws are the supreme law.    The supreme legislative powers "are lodged in the National Council," constitution, article 7, section 1.    Among its reserved powers are these : " To provide by law a revenue for the National Council," constitution, article 7, section 15, paragraph 5 ; " To define offenses against the supreme law and to prescribe penalties therefor," same section, paragraph 8 ; " To grant charters to State Councils, and to provide by law for the issue, revocation, suspension, restoration and reissue of such charters," same section, paragraph 11 ; " To enact laws for the promotion of the general welfare of the Order," same section, paragraph 27.    In article 8, creating its executive department, it is provided, in section 5 : " The National Councilor shall preside at all meetings of the National Council and shall at all times enforce the national laws and decrees of the National Judiciary."    In article 9, providing for the judicial department of the Order, section 10, paragraph 7, the National Judiciary is given exclusive jurisdiction " of all controversies whatsoever, the character of which is such that there is no inferior tribunal having complete jurisdiction," and, by section 11 of said article, the National Judiciary is further given " original and appellate, but not exclusive, jurisdiction in all matters wherein is involved nonconformity to, violation or construction of, the supreme law of the Order."    It is further provided, in article 10, section 8, that " neither state constitution nor state law shall be in conflict with the supreme law, nor abridge the rights or privileges of a member of the Order secured to him by the supreme law."    Subordinate councils, to which members directly hold relation, have authority " subject to the laws of the National or State Council; " and " membership in a Council may be attained only as provided by the supreme law," article 11, sections 2 and 7.    In article 15, section 2, it is provided that " any attempt upon the part of a State Council, or of a Council, to enforce any law or constitutional provision in conflict with the supreme law, is hereby declared to be insubordination, and punishable as the National Council may by law provide."    Among the national laws, we find, in section 1 of chapter 21, on the subject of revenue, that the per capita tax " upon every member of the Order "

is "levied upon the total membership of the Order;" and, in section 2 of the same chapter, direct jurisdiction of the members of the order is asserted by making it an offense for any member to manufacture or obtain blanks, paraphernalia or other articles from any source other than the national secretary. In division 6, chapter 1, section 7, of the national laws, it is made an "offense against the Order" for a member to resist or wilfully obstruct the execution or enforcement of any judgment, mandate or decree of the National Judiciary." This scheme of organization contemplates a direct per capita tax imposed by the supreme body of the order, by operation of its supreme law upon the total membership, and, while it provides that this tax may be transmitted to the national secretary by the State Councils' secretaries, it cannot be said to impose the tax upon the State Council itself, nor to leave it to that body to raise the money by its own methods.

In the case under consideration, it seems that a clear majority of the Pennsylvania State Council refused to levy this tax, and, by their refusal became insubordinate to the supreme authority of the Order and resisted the enforcement of the supreme law. The National Council called upon the State Council's secretary for the collection of the taxes, and he in turn, called upon the subordinate councils, in which the individual members hold their membership. Under the broad terms quoted from the constitution and laws of the Order, it does not appear that the National Council is powerless to enforce its decrees when the State Council revolts against its authority. The members of the Order hold a relation to the National Council, and, after it is given power to levy a direct per capita tax and general authority to provide revenue for its maintenance, it cannot be said to exercise such authority only at the will of the State Councils. Neither the rate of taxation nor the aggregate amount of the tax levied is determined by the State Council. For convenience, the report of the number of members is taken from the reports of that body. But it by no means follows that the refusal of the State Council to enforce the collection of the tax is to deprive the National Council of its revenues or of its authority to collect the same from the members directly, or from the local councils to which they belong. The whole plan and scheme of the Order show that the National Council has reserved to itself

the right to raise revenue by levying a per capita tax, and it has the right to collect this tax by proceedings against the local councils or the members themselves; and, if a State Council becomes insubordinate or even a local council to which the individual member may hold allegiance refuses to make itself the method of collection, the National Council can still deal with the recalcitrant individual member. Neither the liability of the members of the Order nor of the subordinate council for them is dependent, in any degree, upon the consent of the State Council.

The objection that the per capita tax cannot be collected because the amount was not "enacted" by a statute of the order, is without merit and borders on hypercriticism. The finance committee of the National Council recommended that the per capita tax for the ensuing year should be fifteen cents, and this recommendation having been approved, the resolution was duly passed that the tax should be paid to the National Council. It had acted, and by resolution, "enacted" the amount of the per capita tax for the ensuing year. This certainly met every requirement. No more formal method of enactment was required by any law of the society brought to our notice, and it certainly was the usual method of transacting such business in such meetings.

Upon a review of the whole case, we are persuaded that the injunction awarded by the court below was improper. The decree is reversed and the bill dismissed at the cost of the appellees.