## Bell, Appellant, *v.* Yellow Cab Company.

Argued November 20, 1959.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Louis Matkoff,* for appellant.

*James J. Leyden,* with him *Josephine H. Klein,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, April 25, 1960:

Charles H. Bell, the plaintiff, obtained a jury's verdict against the defendant, Yellow Cab Company, in the sum of $29,150 as damages for personal injuries sustained by him as the result of his being hit by a taxicab of the defendant company on the morning of April 15, 1956, in Philadelphia. The defendant moved for judgment n.o.v. and for a new trial. The court en banc dismissed the motion for judgment n.o.v. but entered an order providing that if, within 20 days, the plaintiff filed a remittitur of so much of the verdict as exceeded $17,000, the motion for new trial would be dismissed; otherwise a new trial would be granted. The plaintiff did not file the stipulated remittitur and has appealed the consequent new trial order.

That the new trial was granted solely and exclusively because the trial court deemed the verdict excessive is not open to doubt. The fact of the remittitur alone conclusively evidences that none of the other reasons assigned by the defendant afforded any basis for the grant of a new trial. Obviously, the court could not properly have entered judgment for the plaintiff for the reduced amount, had the plaintiff filed the

remittitur required by the court, if there were other possible and undisposed of grounds assigned for a new trial. It may be postulated, therefore, that, had the court not thought the verdict excessive, it would have entered judgment thereon. That being so, the granting of a new trial, because of excessiveness of verdict, is reviewable here on the merits and not merely for a palpable abuse of discretion. See *Culver v. Lehigh Valley Transit Company,* 322 Pa. 503, 511, 186 A. 70. Cf. also *Keefer v. Byers,* 398 Pa. 447, 159 A. 2d 477.

The court gave no reason for ordering a reduction of the verdict nor for the amount of the reduction, apart from summarily stating that "Considering the record as a whole this court is of the opinion that the verdict of $29,150 is excessive. Consequently, a remittitur to $17,000 is ordered and plaintiff's refusal to file said remittitur requires that a new trial be had."

No serious doubt can reasonably be thought to exist as to the taxicab driver's negligence in striking the plaintiff nor that such negligence was the proximate cause of the plaintiff's injuries. The court below was obviously of the same opinion on the question of the defendant's liability or it would not have indicated that it would enter a judgment for the plaintiff if a remittitur for the specified portion of the verdict was filed. In view of the testimony as a whole we are at a loss to understand why the court below felt impelled to order the remittitur as an alternative to the granting of a new trial. The record is replete with testimony which fully justifies the amount awarded the plaintiff.

The plaintiff's injuries consisted of shock, cerebral concussion, contusion of the right kidney, acute lumbosacral sprain, traumatic bursitis of the greater trochanter, sprain of the medial collateral ligament of the right knee, injury to the lumbo-sacral spine, and multiple contusions, abrasions and lacerations. The osteopathic physician who treated the plaintiff for his

injuries attended him 122 times (17 being house and the remaining office visits). An orthopedic physician, who had first seen the plaintiff a month after the accident and who had re-examined him shortly before the trial began (which was two and one-half years later) testified that, at the latter time, the plaintiff was still suffering intermittent pain in his right hip area, an inability to lie on his right side, pain in his back, which was aggravated by any bending, a limp in walking, that he must continuously wear a back brace or support, that he was between 30 and 40% disabled, and that this extent of disability would be permanent. The osteopathic physician testified that his disability was between 50% and 60%. There was ample testimony as to the plaintiff's pain and suffering, particularly in the lower back and spine.

At the time of the accident, the plaintiff was fifty-five years old. For ten years preceding, he had owned, and operated with the assistance of his wife, a pet and sport supply store in Philadelphia known as Bell's Sport Center. He conducted the business, which was a relatively small one, on the first floor of his residence, he and his wife living on the second floor.

In order to establish the plaintiff's loss of earnings and diminution of his future earning power, due to the injuries he suffered in the accident, he was permitted to testify, *without objection from the defendant,* that his net income from his business in 1955 (the year preceding the accident) was $3,982.55. He also testified, *again without objection from the defendant,* that his net income from the business in 1956, the year of the accident, was $1,479.78, or a net difference in income of roundly $2,500. There is further testimony that the plaintiff was forced because of his incapacity to close out his business; that he has since been unable to obtain gainful employment; and that his wife, who formerly assisted in his store, has been compelled to

take outside employment for the support of herself and husband.

On the basis of the plaintiff's injuries and damages, it is not discernible how the court below could conclude that the jury's verdict was excessive. However, the appellee correctly argues that, regardless of the question of excessiveness of verdict, we may affirm the action of the court below for any valid reason appearing of record even though it was not relied upon or adjudicated by the court as support for its new trial offer. As we have already pointed out, the record in this case conclusively establishes that excessiveness of the verdict was, in the opinion of the court below, the only valid ground for granting a new trial. Nor can the concluding sentence of the court's opinion that, "Since defendant has not appealed from our disposition of its post trial motions, we do not herein pass upon any question other than the amount of the Plaintiff's verdict" serve to imply that other reasons for a new trial possibly existed. The lower court's indicated willingness to enter judgment on the verdict, if the plaintiff assented to a reduction in the amount, precludes the possibility at least in the thinking of the court, that other reasons for the new trial can be cited. Even so, it is nonetheless the appellee's privilege to advance other reasons in asserted justification of the new trial order if such there be.

To that end, the appellee contends that the trial judge erred in admitting in evidence the testimony of the plaintiff's diminished income from his business, after his injury and consequent inability to attend to it, for the purpose of establishing his earning capacity and loss of earnings. But, the appellee is without standing to press this complaint. The testimony as to the plaintiff's earnings from his business the year prior to the accident and his diminished earnings from the same source the year following the accident was re-

ceived in evidence *without objection from the defendant company.* The appellee cannot, therefore, be permitted to use the unobjected to admission of such evidence as the predicate of alleged trial error. For failure to object to the admission of evidence timely, counsel may not, as a matter of right, complain later. As we observed in *Keefer v. Byers,* supra, objections to offers or admissions of evidence and exceptions to rulings thereon serve a broader useful purpose than merely protecting the right of the objector or exceptant. The opposing party, as well as the court, is entitled to have such procedures pursued timely if he is to be impaled upon their subject-matter later.

If defendant's counsel thought that the testimony which the plaintiff adduced to establish his loss of earnings was not competent or was inadequate for the purpose, there was ample opportunity by cross-examination to inquire into the evidentiary value of the plaintiff's earnings from his business at all relevant times. But, the defendant did not question the means adopted by the plaintiff at trial to prove his pecuniary loss due to his injuries which the defendant had inflicted. Nor did the defendant object to the admission of this testimony and, thereby, evoke a ruling by the court with respect to its admissibility. Nor did the defendant take *any* exception to the court's charge with respect to the plaintiff's losses or how the jury should arrive at the damages due him in the event they found for the plaintiff. All that counsel requested from the court in this connection was a further instruction that "they [i.e., the jury] are not to understand the lengthy portion of [the] charge concerning the possible damages as any indication on [the court's] part." A party may not sit by silent, take his chances on a verdict, and, if it is adverse, then complain of matter which, if error, could have been eradicated during the trial if brought to the court's attention properly and

timely. *Keefer v. Byers,* supra; *Commonwealth v. Razmus,* 210 Pa. 609, 611, 60 A. 264.

The testimony concerning the plaintiff's loss of earnings having been received in evidence without objection, it cannot now be justly eliminated. The only presently permissible question regarding it is its probative value. Ordinarily, earnings which represent the result of combined capital and personal services is not capable of establishing the earning power of the servitor. Where, however, the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reliable criterion of the owner's earning power. As recognized in *Offensend v. Atlantic Refining Company,* 322 Pa. 399, 404-405, 185 A. 745, "The general rule is that profits derived from a business are not to be considered as earnings and cannot be admitted as a measure of loss of earning power, but where they are almost entirely the direct result of personal management and endeavor, they are an accurate measure of earning capacity and admissible as such: Dempsey v. City of Scranton, 264 Pa. 495, and authorities cited therein; Pietro v. P. R. T. Co., 298 Pa. 423." It was on this theory that the testimony of the plaintiff's diminished earnings was introduced and the trial judge acted properly, in the circumstances, in receiving it in evidence for the purpose for which it was offered. The plaintiff, himself, was an avid sportsman and many of his patrons were persons who sought him out because of the many and various kinds of practical information and advice he could give them concerning hunting, fishing, the feeding and care of pets, repairing equipment, etc. When, because of the injuries he suffered in the accident, he was no longer able to attend to his business, it declined in the following year to the extent already stated.

Defendant made no effort by cross-examination to impair the worth of the plaintiff's testimony as to his lost earnings following the accident. The evidentiary situation is much the same as in the *Offensend* case, supra, where the defendant contended that the plaintiff was obliged to show by books, records, or accounts of some kind, that his statement of net earnings was correct. We rejected the contention (p. 405) because the defendant had been "afforded a full opportunity to bring out on cross-examination the manner in which [the plaintiff] arrived at his figures, and, failing to avail himself of this opportunity, he cannot now complain the estimate was not in fact accurate." When the business is small and the predominating factor in its success is the directing and working genius of the owner, such a business can be characterized as personal to that individual. Therefore, "Each case must depend on the nature and extent of the business, the amount of personal direction and labor of the party engaged in connection therewith, as well as the amount of capital invested and the labor employed": *Baxter v. Philadelphia & Reading Railway Company,* 264 Pa. 467, 475, 107 A. 881.

In the instant case, the testimony justified the conclusion that the earnings from the plaintiff's small business were primarily the result of his personal attention and labor. The trial judge did not err, therefore, in submitting the testimony to the jury as a basis for determining his loss of earnings and the value of the services which he was capable of performing before the accident and the extent of the limitations thereafter on his capacity to work at gainful employment.

Several items of additional business expense to the plaintiff, due to his incapacity from his injuries, were testified to by him which were obviously duplications of expenses embraced in his computation of net earnings. This clearly appears. After the plaintiff had

testified without objection that it was necessary, following his injury, for him to employ a woman clerk at $30 per week to assist his wife in tending store and a delivery man one day a week at $18 for the day, to cover his food-for-pets route, which he had formerly done himself, he then testified to his net earnings for the year preceding and for the year succeeding the accident. Following that, his counsel asked him the amount of his payroll for extra help for the year 1956. This question was promptly and properly resisted by counsel for the defendant as a duplication of expense items which had been already charged in the plaintiff's profit and loss sheet in arriving at the year's net earnings. The trial judge, in his charge to the jury, properly removed the $30 per week clerk hire item from the jury's consideration as an element of separate damage to the plaintiff. The court did not, however, make a like exclusion of the $18 paid the delivery man for one day of each of the 50 weeks that the business was continued following the plaintiff's injury. Since the jury is to be presumed to have reflected in its verdict the elements of damage testified to, which the trial judge did not exclude, a deduction of the $18 a week for the period specified from the amount of the verdict will be just.

The plaintiff was also mistakenly permitted to introduce testimony, under a blanket objection allowed at the defendant's request, of expenses incurred by him in his unsuccessful attempt to sell his business as a going concern. He ultimately closed it out on March 15, 1957, and sold his inventory through an auctioneer. The net loss testified to by the plaintiff for the months of January, February and up to March 15, 1957, from the operation and liquidation of the business was $450. The trial judge charged that this sum could be taken into consideration by the jury in arriving at the amount of their verdict. This, of course, was error. The loss

from the liquidation of the business had no relevancy to the plaintiff's working capacity or earning power. It was clearly inadmissible and should have been excluded by the court. The only reasonable assumption is that the jury computed its verdict on the basis of what the trial judge's charge permitted and consequently included therein the $450 item of business loss. It is, therefore, only fair and proper that this item also be deducted from the amount of the jury's verdict. When the verdict has been so adjusted by deducting therefrom both of these noncompensable items of business expense, aggregating $1,350, a just verdict of $27,800 will be the result for which amount judgment should be entered.

Accordingly, the order granting a new trial is reversed and the record remanded with directions that the verdict in favor of the plaintiff be reduced to $27,800 and that judgment be entered thereon.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

Plaintiff recovered a verdict against defendant in the sum of $29,150 for personal injuries. The Court en banc—because, considering the record as a whole, the verdict was grossly excessive—remitted that part of the verdict in excess of $17,000 and upon plaintiff's refusal to file the suggested remittitur granted a new trial. From the Order granting a new trial, plaintiff took this appeal.

In considering—not the grant of a new trial but—the entry of a judgment non obstante veredicto, it is hornbook law that an appellate Court considers only the evidence in favor of the verdict winner, together with all reasonable inferences therefrom: *Coradi v. Sterling Oil Co.*, 378 Pa. 68, 105 A. 2d 98; *Shaw v. Pennsylvania R. R. Co.*, 374 Pa. 8, 96 A. 2d 923; *Lanni v.*

*Pennsylvania R. R. Co.,* 371 Pa. 106, 88 A. 2d 887; *Miller v. Pennsylvania R. R. Co.,* 368 Pa. 507, 84 A. 2d 200; *Miller v. Hickey,* 368 Pa. 317, 81 A. 2d 910; *McDonald v. Ferrebee,* 366 Pa. 543, 79 A. 2d 232.

The test for the grant or refusal of a new trial is as different from the n.o.v. test as day is from night.

In *Mozino v. Canuso,* 384 Pa. 220, 120 A. 2d 300, Mr. Justice (now Chief Justice) JONES said (page 223) : "One who appeals from the grant of a new trial assumes a very heavy burden indeed. Before we will reverse, the appellant must be able to show that the trial court *was guilty of a palpable abuse of discretion\** or acted on an erroneous rule of law which, in the circumstances, controlled the outcome of the case *·and is certified by the trial court* as the sole reason ·for the granting of a new trial. The statement of the rule most frequently cited appears in Marko v. Mendelowski, 313 Pa. 46, 47, 169 A. 99, which has been quoted many times down to the present. See e.g., Pendleton v. P. T. C., 376 Pa. 598, 600, 103 A. 2d 724; Beal v. Reading Company, 370 Pa. 45, 47-48, 87 A. 2d 214; Foster v. Waybright, 367 Pa. 615, 618, 80 A. 2d 801; and Tupponce v. Pa. R. R. Co., 358 Pa. 589, 590, 57 A. 2d 898."

We note parenthetically that this technical *certification* requirement, although it is presently of relatively little importance, has been iterated and reiterated in more than forty decisions of this Court. On the other hand, a half dozen or a dozen decisions of this Court do not require such certification where the sole reason for granting the new trial clearly appears in the lower Court's opinion: *Muroski v. Hnath,* 392 Pa. 233, 139 A. 2d 902; *Londrino v. Equitable Life Assurance Society,* 377 Pa. 543, 105 A. 2d 333; *Fitzpatrick v. Sheppard,* 346 Pa. 240, 29 A. 2d 475; *Beal v. Read-*

---

\* Italics throughout, ours.

*ing Co.,* 370 Pa. 45, 87 A. 2d 214; *Hess v. Gusdorff,* 274 Pa. 123, 117 A. 671; *Samuels v. Johnson,* 355 Pa. 624, 50 A. 2d 670; *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857. The cases on this technical point of certification are irreconcilable; however, I welcome the clearing up of this confusion and the adoption of the present *practical* test which I have always favored, namely—it is not necessary for the trial Judge or the lower Court to certify that its reason for granting a new trial was the sole reason *if such fact clearly appears* from his (or its) opinion.

However, when an appellee is entitled to a new trial for any sound reason whatsoever, the grant thereof by the lower Court will be sustained even though that Court gave an inadequate or erroneous reason for its action. *Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899; *Mumbower v. Weaver,* 282 Pa. 605, 128 A. 535; *State Hospital for Criminal Insane v. Consolidated Water Supply,* 267 Pa. 29, 110 A. 281; *Commonwealth v. Wing,* 253 Pa. 226, 97 A. 1072; *Corgan v. George F. Lee Coal Co.,* 218 Pa. 386, 67 A. 655; *Independence Party Nomination,* 208 Pa. 108, 57 A. 344; *Brew v. Hastings,* 206 Pa. 155, 55 A. 922; *Derry Council v. State Council,* 197 Pa. 413, 47 A. 208; *Young's Estate,* 65 Pa. 101.

When a trial Court grants a new trial because the verdict was excessive (or inadequate) it is long and undisputably established that the test in an appellate Court is whether the action of the lower Court, considering *all* the evidence in the case, constituted a clear abuse of discretion. *Smith v. Allegheny County,* 377 Pa. 365, 105 A. 2d 137; *Duffy v. The Monongahela C. R. R. Co.,* 371 Pa. 361, 89 A. 2d 804; *Ferruzza v. Pittsburgh,* 394 Pa. 70, 145 A. 2d 706; *Wargo v. Pittsburgh Railways Co.,* 376 Pa. 168, 101 A. 2d 638; *Dupont v. Gallagher,* 360 Pa. 419, 62 A. 2d 28; *King v. Equitable Gas Co.,* 307 Pa. 287, 161 A. 65; *Jones v.*

*Williams,* 358 Pa. 559, 58 A. 2d 57; *Bochar v. J. B. Martin Motors, Inc.,* 374 Pa. 240, 97 A. 2d 813; *Sherman v. Manufacturers Light and Heat Company,* 389 Pa. 61, 132 A. 2d 255; *Clewell v. Pummer,* 388 Pa. 592, 131 A. 2d 375; *Smith v. L. Blumberg's Son, Inc.,* 388 Pa. 146, 130 A. 2d 437; *Givens v. W. J. Gilmore Drug Company,* 337 Pa. 278, 10 A. 2d 12; *Edwards v. Crawford,* 328 Pa. 449, 196 A. 58; *Brown v. Castle Shannon Boro.,* 318 Pa. 363, 178 A. 678; *Petrie v. Kaufmann & Baer,* 291 Pa. 211, 139 A. 878; *Smith v. Times Publishing Co. et al.,* 178 Pa. 481, 36 A. 296.

. In *Smith v. Allegheny County,* 377 Pa. 365, 105 A. 2d 137, the Court said (page 368) : "An appellate Court rarely ever reverses a lower Court because the verdict was *excessive,* but it is our duty to do so if the jury's verdict shocks our sense of justice, or when the action of the lower Court, in dismissing a motion for a new trial, constituted a clear abuse of discretion: Wargo v. Pittsburgh Railways Co., 376 Pa. 168, 101 A. 2d 638; Duffy v. The Monongahela C. R. R. Co., 371 Pa. 361, 89 A. 2d 804; Dupont v. Gallagher, 360 Pa. 419, 62 A. 2d 28; King v. Equitable Gas Co., 307 Pa. 287, 161 A. 65; Jones v. Williams, 358 Pa. 559, 58 A. 2d 57."

In *Bochar v. J. B. Martin Motors, Inc.,* 374 Pa. 240, 97 A. 2d 813, Mr. Justice MUSMANNO said (pages 241-242) : "The appellants in this case appeal from judgment on a verdict which they contend is *excessive.* The jury's verdict was $15,464.20, which the lower court reduced to $12,000. We begin, therefore, with the accepted rule that—'It is the duty of the lower court to control the amount of the verdict; it is in possession of all the facts *as well as the atmosphere of the case, which will enable it to do more even-handed justice between the parties than can an appellate court.'* (King v. Equitable Gas Co., 307 Pa. 287.) We can only disturb the lower court's adjudication of the verdict in

the event it 'shocks a sense of justice' to allow it to stand."

In *Sherman v. Manufacturers Light and Heat Company*, 389 Pa., supra, the Court said (page 68) : *"In the light of (1) the conflicting medical evidence* with the radically different opinions expressed as to the cause of plaintiff's condition and its prognosis . . . we cannot say that the lower Court's refusal of a new trial, because of the inadequacy of the verdict of $22,000 constituted a manifest abuse of discretion."*

To say that a verdict is excessive is merely to pinpointedly say that it is against the weight of the evidence.

In *Kiser v. Schlosser*, 389 Pa. 131, 132 A. 2d 344, the Court, speaking through Mr. Justice COHEN, said (pages 132-133) : "The issue raised by these appeals has been before this Court on innumerable occasions: Did the trial court abuse its discretion in awarding new trials on the ground that the verdicts were against the weight of the evidence? . . . The determination of whether a verdict is against the weight of the evidence, so that a new trial should be granted, rests primarily within the discretion of the trial court, and its action will not be disturbed unless there is a palpable abuse of that discretion as determined *from a careful review of the entire record,* or a clear error of law which controlled the outcome. True it is that the assaying of the credibility of witnesses and the resolving of conflicts in their testimony are for the jury. But it is

---

* "It is sometimes erroneously contended that in considering the grant or refusal of a new trial, just as in a consideration of an appeal from the refusal to take off a nonsuit or from the entry of a judgment non obstante veredicto, all of the evidence must be taken in the light most favorable to the verdict winner. Of course this is not the correct test on an appeal from the grant or refusal of a new trial: [Citing 23 decisions of this Court]".

equally true that the trial judge may not hide behind the jury's verdict; he has a duty to grant a new trial when he is convinced that the judicial process has resulted in the working of an injustice upon any of the parties."

In *Clewell v. Pummer*, 388 Pa. 592, 131 A. 2d 375, the Court said (pages 598-599): "Where a trial Judge or Court sees and hears the witnesses, it has not only an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice: Bellettiere v. Philadelphia, 367 Pa. 638, 81 A. 2d 857; Wilson v. Kallenbach, 332 Pa. 253, 2 A. 2d 727; Campbell v. Philadelphia Transportation Co., 366 Pa. 484, 77 A. 2d 437; Elia v. Olszewski, 368 Pa. 578, 84 A. 2d 188; Maloy v. Rosenbaum Co., 260 Pa. 466, 103 A. 882; Frank v. Losier & Co., Inc., 361 Pa. 272, 64 A. 2d 829; Dinan v. Supreme Council C. M. B. A., 213 Pa. 489, 62 A. 1067. In such a case we will not reverse, unless there is a clear abuse of discretion or an error of law which necessarily controlled the grant of the new trial: Edelson v. Ochroch, 380 Pa. 426, 111 A. 2d 455; Foster v. Waybright, 367 Pa. 615, 80 A. 2d 801; Mozino v. Canuso, 384 Pa. 220, 120 A. 2d 300.

"In Coward v. Ruckert, 381 Pa. 388, 113 A. 2d 287, Justice MUSMANNO, speaking for this Court, said (page 393): 'In Frank v. W. S. Losier & Co., Inc., 361 Pa. 272, 276, this Court . . . said: ". . . The granting of a new trial is an inherent power and immemorial right of the trial court and an appellate court will not find fault with the exercise of such authority in the absence of a clear abuse of discretion. (Citing cases) One of the least assailable grounds for the exercise of such power is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial

be awarded; especially in such a case is an appellate court reluctant to interfere." '

"Moreover, in such circumstances, namely, where the jury's verdict is capricious or against the weight of the evidence or results in a miscarriage of justice, it should not be allowed to stand, no matter how many new trials must be granted in the interest of justice: Elia v. Olszewski, 368 Pa., supra, and Maloy v. Rosenbaum Co., 260 Pa., supra. In Maloy. v. Rosenbaum Co., 260 Pa., supra, the Court said (page 472):

" '. . . While the ascertainment of the underlying facts, and the drawing of the inferences and final conclusions therefrom, are for the jury, even where strong conflicting oral evidence is produced by a defendant, yet, in every such instance, a grave responsibility rests upon the trial judge to see to it that no verdict contrary to the weight of the evidence or shocking to judicial conscience is allowed to stand, no matter how many new trials must be granted in order to effect the ends of justice; . . .'. See to the same effect: Elia v. Olszewski, 368 Pa., supra, and Dinan v. Supreme Council C. M. B. A., 213 Pa., supra."

See also the learned opinion of former Chief Justice STERN in *Bellettiere v. Philadelphia*, supra, which very ably analyzed and reviewed many cases and reiterated the above mentioned principles pertaining to the grant or refusal of a new trial.

The Evidence of Both Parties.

The majority has stated in great detail the injuries suffered by plaintiff, who was 55 years old and conducted a sports store from which his net income prior to the accident was $3,900 a year. The majority opinion does not mention the fact that plaintiff was discharged from the hospital where he was treated for cuts and bruises and X-rayed, *3½ hours after he had entered the hospital*. Plaintiff was treated by an osteopath 122 times, 17 times at his home and the remaining 105

times at the osteopath's office, with total medical expense of $897. Two years after the accident plaintiff testified he was still suffering intermittent pain, a limp when he walked, and that he must continually wear a back brace or support. Plaintiff's osteopath testified that his disability was between 50 per cent and 60 per cent and his disability would be permanent.

On the other hand, defendant's doctor, Irvin Stein, who examined plaintiff 8 months after the accident as well as during the trial, testified that the X-ray examination, which was taken *right after the accident,* was essentially negative; that he could find no evidence of bursitis; that both legs and hips were normal and that the patient complained a great deal. At the time of plaintiff's second examination by Dr. Stein two years after the accident plaintiff said that he had improved relatively little. *"He said that he has not yet been able to do his work. . . .* There is in my opinion much exaggeration on the part of the patient. . . . He is wearing a very light elastic support . . . which is of no supporting value and . . . is not related to the accident. As to the prognosis—the prognosis is the outlook—it appears that his acute difficulty here was pretty well gone *within a few weeks after the accident.* Despite his continued complaints and his indication of disability, I can find no objective reason for it. At this time, this patient, in my opinion, *is not disabled,* nor do I feel that he requires the cane that he makes so much use of. I found that he can move when his attention is deviated, and much less when his attention is fixed. For instance, he will walk one step after another, moving one leg after another, without his cane when walking. Yet, if he is asked to stand and pick up one leg after another, *he goes into quite a performance,* such as collapsing, grasping onto something, saying he can't do it and so forth.

"Q. As a result of your examination, is your opinion any different than it was in December of 1956, or is it the same?  A. Well, I have no doubt he may have had some injuries at the time of the accident, but he was recovered from them at the time I saw him, and I see no reason to change my opinion at this date."

Edmond Doran, an investigator for defendant, testified that on June 4, 1958 he went to plaintiff's home, that he watched plaintiff climbing up and down a ladder and painting the outside of his house for over half an hour; that he then took pictures of him *carrying the ladder* and bending up and down in the area of the house.  "After I took about 25 or 30 feet of motion pictures he turned around as he was holding up a ladder and then he immediately put the ladder down and started to move in a peculiar manner and disappeared out of sight."  Doran saw plaintiff working for about an hour and 20 minutes at the windows, going up and down the 7 or 8 rung ladder, and painting the awning and the house.  Plaintiff never dragged or moved his right leg in a peculiar fashion until he saw Doran.

Plaintiff testified that he was unable to attend to his business, as a result of which his income fell from $3900 to $1479 a year, *and because of his incapacity* he was forced to close out and sell his business *after* the accident.  Defendant called McKeown, a real estate broker, who testified that plaintiff had engaged him to sell his business *before the accident* because his business "was going down, down, down."  McKeown also produced a written agreement dated March 9, 1956 (the accident was April 18, 1956), authorizing McKeown to sell plaintiff's home and business for $17,-500.

The trial Judge who, we repeat, saw and heard all the witnesses, none of whom we saw or heard, granted a new trial because the verdict was *"grossly excessive."*

It is obvious that the trial Judge could have believed from plaintiff's own testimony or from his manner of testifying that he was greatly exaggerating his injuries and the period of his pain; and he certainly could have believed from defendant's evidence that plaintiff's injuries and pain cleared up within a relatively short time after the accident, and that plaintiff was a gross exaggerator, a faker and a liar.

In the light of all these facts and circumstances, I don't see how this Court can possibly say—considering all the evidence, i.e., the evidence for the defendant as well as the evidence for the plaintiff, and likewise the unknown factor of credibility—that the lower Court clearly and palpably abused its discretion in granting a new trial because the verdict was grossly excessive, unless we wish to greatly emasculate the immemorial power of a trial Judge or lower Court to grant a new trial.

For these reasons I dissent.