# Elwood S. Gilton, Appellant, v. Hestonville, Mantua & Fairmount Passenger Railway.

*Negligence—Street railways—Defective rail.*

In an action against a street railroad company to recover damages for personal injuries caused by the rim of the wheel of plaintiff's wagon being caught by the end of a rail which had become worn and split, the case is for the jury where plaintiff's evidence tends to show that the car tracks for two squares from the place of the accident were in a condition dangerous to persons driving on the street because the rails were worn and many of them insecurely fastened or entirely loose ; that the rail which caused the injury was so worn that it would not hold the spikes by which it had been fastened down, and that at one end it was split and the parts separated about an inch ; that the rail appeared to have been in this condition for some time ; and that the defects were apparent and would have been observed by any one supervising the track.

A street railway company is bound to know that use and climatic influences will produce defects in rails, and it is bound to make such a continued inspection as will detect those which are apparent.

Argued Jan. 12, 1895. Appeal, No. 486, Jan. T., 1894, by plaintiff, from order of C. P. No. 1, Phila. Co., Sept. T., 1889, No. 396, refusing to take off nonsuit. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Trespass for personal injuries.

At the trial it appeared that plaintiff, a milkman, was injured on June 16, 1889, while driving his wagon over a defective rail on defendant's railway. The condition of the rail was described by Thomas McCarthy, a witness for plaintiff, as follows:

" Q. I want you to tell what you saw about that rail. A. The rail was a worn-out rail, and catched the rim of the wheel, and it was bented up about two feet and a half. Q. How was it worn out—so worn out that it showed plainly? A. So worn out that nothing could hold it fast.· Q. Then it must have been that way a good while ? A. Oh, that way a good while. It wasn't safe to drive on. You could see it. Q. Anybody walking along the track could not fail to see that that was a worn-out rail? A. No, indeed. Q. I suppose you could not see it though if you were driving along? A. No. Q. How

about the spikes? A. The spikes were all wore out; they wouldn't hold no rails fast. Q. Do you know generally the sort of repair that road was kept in about that time? A. Yes, pretty much so. Q. And was it pretty good, or was it pretty bad so? A. I don't think there was a dozen good rails on Lancaster avenue from Fifty-second street to Forty-fourth."

Other witnesses gave similar testimony as to the condition of the track.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) entry of nonsuit; (2) refusal to take it off.

*John G. Johnson*, for appellant.—The defendant was liable, without proof of length of time of continuance of the condition, for a defective rail which made the highway dangerous: Penna. & Ohio Canal Co. v. Graham, 63 Pa. 297; Fritsch v. Allegheny, 91 Pa. 228; Rapho v. Moore, 68 Pa. 407.

There was evidence both as to the condition of the rail itself and of a general condition of non-repair, which should have been submitted to the jury, even though the defendant corporation was not liable, saving for a failure to repair after lapse of a reasonable time: Bradwell v. Pittsburg & West End Pass. Ry., 153 Pa. 105; Elliot on Roads & Streets, 462; Kibele v. Phila., 105 Pa. 44; Vanderslice v. Phila., 103 Pa. 107; 2 Thompson on Negligence, 985; 2 Dillon on Municipal Corporations, 4th ed., p. 1298; Elliot on Roads & Streets, 463.

*Russell Duane, J. Bayard Henry* with him, for appellee.— All corporations, whether public or private, which have control of a road or highway, are liable for the consequences of a defect therein only when it is proved that such corporations have been guilty of negligence; and in order to establish negligence it is essential to prove notice to the corporation of such defect, either actual or constructive: Act of April 6, 1859, P. L. 389; 13th & 15th Sts. Pass. Ry. v. City, 13 W. N. C. 487; Phila. v. Ridge Ave. Pass. Ry., 143 Pa. 444; Osgood v. Lynn & Boston R. R., 130 Mass. 492; Oakland Railway Co. v. Fielding, 48 Pa. 320; Sherman & Redfield on Negligence, § 367; Born v. Allegheny

& Perrysville Plank Road Co., 101 Pa. 334 ; Springer v. Phila.,
12 Atl. 490; Otto Twp. v. Wolf, 106 Pa. 608; Aylesworth
v. Chicago, Rock Island & Pacific R. R., 30 Iowa, 459 ; Good-
nough v. Oshkosh, 24 Wis. 549 ; Billings v. Worcester, 102
Mass. 329 ; 2 Sherman & Redfield on Negligence, 4th ed. § 338 ;
Otto Twp. v. Wolf, 106 Pa. 608 ; Goodson v. Des Moines, 23
N. W. 655.

If the appellant's theory of the appellee's liability in this case
was to be logically carried out, it would make the appellee prac-
tically an insurer of all outsiders using its lines against defects
therein.   The law does not create any such general warranty or
insurance of the safe condition of highways on the part of cities,
or townships, or turnpikes, or railways : Sherman & Redfield on
Negligence, §§ 290, 367 ; Rapho v. Moore, 68 Pa. 407 ; Burns
v. Bradford, 137 Pa. 361 ; Otto Twp. v. Wolf, 106 Pa. 508 ;
Born v. Allegheny & Perrysville Plank Road Co., 101 Pa. 334 ;
Oakland Ry. Co. v. Fielding, 48 Pa. 320 ; Collins v. Leafey,
124 Pa. 203.

OPINION BY MR. JUSTICE FELL, March 4, 1895 :

The plaintiff was injured by being thrown from his wagon
while driving on the tracks of the Hestonville, Mantua & Fair-
mont Passenger Railway Company, the corporation defend-
dant.   The accident was caused by the rim of the wheel of his
wagon being caught by the end of a rail which had become
worn and split.   A nonsuit was entered upon the ground that
it did not appear that the defendant had notice, actual or con-
structive, of the defective condition of the rail.   It was shown
by the testimony that the car tracks for two squares from the
place of the accident were in a condition dangerous to persons
driving on the street because the rails were worn and many of
them insecurely fastened or entirely loose; that the rail which
caused the injury was so worn that it would not hold the spikes
by which it had been fastened down, and that at one end it
was split and the parts separated about an inch.   The rail
appeared to have been in this condition for some time, and the
defects were apparent and would have been observed by any one
supervising the track.

After the accident this rail was found bent so that its end
was two feet above the surface of the street.   It did not clearly

appear whether the rail had been bent by the wheel of the plaintiff's wagon catching in the spilt end, or by a like preceding cause. Either conclusion might have been drawn by the jury, and it was unimportant which was reached. If the rail had become so worn that it was loose from the timbers to which it had been spiked, and its end so split that a wagon wheel would probably become wedged in it, the danger was as real, though not as manifest and imminent, as if its end was bent up. The proof was distinct that the rim of the wheel was caught in the end of the rail, and whether it was caught before or after the rail was bent went only to the degree of nonrepair of which the defendant should be held to have had notice. If the rail was worn and loose and split it was an object of danger whether bent or not, and its becoming bent would naturally follow as the result of its condition. The defect in the rail did not occur suddenly or from an unusual or an accidental cause ; it was the result of ordinary and long-continued use, it was apparent and the danger from it probable.

Without holding the defendant to a higher duty than to make repairs after notice, either actual or constructive, of defects, there seems to be enough in the evidence to have carried the case to the jury. The duty of the defendent to keep the tracks in repair was clear and imperative. It was bound to know that use and that climatic influences would produce defects in the rails, and it was bound to make such a continued inspection as would detect those which were apparent. The defects in the rail in question did not arise in a day, nor probably in a week or a month. The certainty that they would arise in time imposed the duty of continued vigilance.

The judgment is reversed and a procedendo awarded.