Culver et al., Appellants, *v.* Lehigh Valley Transit Company et al.

504

Argued May 18, 1936. Before Kephart, C. J., Schaffer, Maxey, Linn, Stern and Barnes, JJ.

*Fred B. Gernerd,* for appellants.

*Henry L. Snyder,* with him *William J. Wilcox,* of *Snyder, Wert & Wilcox,* and *Edmund G. Hauff,* for appellee.

OPINION BY MR. JUSTICE STERN, June 26, 1936:

On the morning of February 2, 1932, plaintiff Albert E. Culver was driving his automobile east on the southerly side of Main Street in the Borough of Emaus en route from Laurel, Delaware, to Lehigh University, Bethlehem. The wife plaintiff Nellie G. Culver, and her sister, plaintiff Mary H. Cooper, were riding on the rear seat. Culver desired to pass a small Ford car driving immediately ahead of him and for that purpose turned left and straddled the right or southerly rail of the trolley track of defendant company. According to the version of Culver and his witnesses, he was driving at this time at a rate of from 18 to 20 miles per hour and the street was dry. After passing the Ford car, he turned diagonally right, at a point about 200 feet east of Keystone Avenue, in order to come again to the southerly side of the street; his left front wheel passed over the

southerly rail but his left rear wheel caught in it; the car slid for a distance of from five to ten feet before the wheel freed itself, and as it did so the car was pitched to the side of the street into a telegraph pole. All of the plaintiffs were seriously injured. There was abundant testimony to the effect that the accident was due to the fact that, at the point where the left rear wheel came in contact with the rail, the latter protruded from 1½ to 3½ inches above the level of the street on the inside of the track. This situation resulted from a depression in the brick paving immediately inside the rail for a distance of several feet. Witnesses stated that the condition had existed for a period of at least six months prior to the accident.

Two suits were brought, one by Culver and his wife, and the other by Mary H. Cooper. They were tried together. The jury found a verdict for Culver in the sum of $30,000, for Nellie G. Culver, $5,000, and for Mary H. Cooper, $14,000. Defendant filed motions for judgment n. o. v., which were overruled, but its rules for a new trial were made absolute. There are two appeals, one by defendant from the refusal to grant its motions for judgment n. o. v., the other by plaintiffs from the granting of a new trial.[1]

First considering defendant's appeal, the company concedes, as it must, that it was under a duty to keep the rails and the track between them in a reasonably safe condition so that persons crossing on foot or in vehicles, and themselves using proper care, would not be injured by reason of failure on the part of defendant to fulfill

---

[1] The defendant did not take an appeal, and moved to quash that of plaintiffs, because of a restraining order by the federal court against the commencement or continuance of suits against defendant. Subsequently, however, it was agreed between the parties that plaintiffs should be allowed to proceed with their appeal upon condition that defendant also should be heard by this court in the same manner as if it had taken a regular appeal from the refusal of the court below to grant its motions for judgment n. o. v.

this obligation. Defendant was the successor of the Allentown & Emaus Street Railway Company, which had been granted by the borough the right to operate an electric street railway on Main Street; the service had been discontinued a few months before the accident, but the rails remained in place.

"The duty of the defendant to keep the tracks in repair was clear and imperative. It was bound to know that use and that climatic influences would produce defects in the rails, and it was bound to make such a continued inspection as would detect those which were apparent": *Gilton v. Hestonville, Mantua & Fairmount Passenger Ry.*, 166 Pa. 460, 463.

"It is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right-of-way in good condition, even in the absence of any express contract or statutory direction to that effect": *Reading v. United Traction Co.*, 202 Pa. 571, 573. See also *Bradwell v. Pittsburgh & West End Passenger Ry. Co.*, 153 Pa. 105, 106; *Reading v. United Traction Co.*, 215 Pa. 250; *Brobston v. Darby Borough*, 290 Pa. 331, 336; *Yoder v. Philadelphia*, 315 Pa. 586, 591; 54 A. L. R. 1292. The liability of such a company often arises by reason of its negligence in permitting a rail to protrude above the level of the street: 54 A. L. R. 1298, 1299, 1311, 1312; 60 C. J. 409, § 304.

Defendant, admitting these general principles, contends that in the present case the elevation of the rail was not great enough to justify an imposition of liability. It is true that a defect in a highway may be so insignificant a jury should not be allowed to find that its maintenance constitutes negligence. Thus in *McGlinn v. City of Philadelphia*, 322 Pa. 478, where plaintiff fell by reason of a difference of 1½ inches in the level of the ends of two abutting curbstones, it is held that this was not such a defective condition as to give rise to actionable negligence. But all the circum-

508

stances must be taken into account, and a slight rut or depression, as here, immediately alongside a rail, may be a more likely source of danger than if on the open highway. There was testimony in the present case that the cars of several other persons on various occasions had caught in the rail at the point of this accident. In *Gillard v. City of Chester*, 212 Pa. 338, a rise in the curbstone of from 3½ to 4 inches above the sidewalk was submitted to the jury as the basis of a charge of negligence against a municipality; and in *Shafer v. Philadelphia*, 60 Pa. Superior Ct. 256, it was said (p. 258) : "We find nothing in the above cases nor in any others that holds that a depression of three or four inches is such a slight inequality as would not suffice to sustain a recovery. . . . What particular shallowness of depression in a sidewalk or street forms such a slight inequality in the surface, as to excuse its presence and release the city of liability therefor cannot be definitely stated. Each case must necessarily be determined by the surrounding circumstances and generally the matter must be left to the jury." Instances of liability in similar cases abound in other jurisdictions.[2]

The statements of claim as originally filed in the present case did not allege that the defective condition of the rail had existed prior to the accident. Defendant contends therefore, since liability exists only if actual or constructive notice be shown, that the statements of

---

[2] For example, *Smith v. Union Railway Co.*, 61 Mo. 588 (protrusion of rail 3 to 4 inches); *Huff v. St. Joseph Railway, Light, Heat & Power Co.*, 213 Mo. 495 (3 to 4 inches); *Birmingham Railway, Light & Power Co. v. Donaldson*, 14 Ala. App. 160 (2 to 4 inches); *Schild v. Central Park, North and East River R. R. Co.*, 133 N. Y. 446 (2 inches); *Houston City Street Ry. Co. v. DeLesdernier*, 84 Tex. (¼ to ¾ inches); *Columbus, Delaware & Marion Electric Co. v. Brown*, 42 Ohio App. 109 (2 inches); *Michigan City v. Boeckling*, 122 Ind. 39 (4 inches); *Tobin v. Portland, Saco & Portsmouth R. R. Co.*, 59 Me. 183 (1½ to 2½ inches depression in platform); *Clapp v. New York, New Haven & Hartford R. R. Co.*, 229 Mass. 532 (2½ inches between planking and rail).

claim did not set forth a cause of action. After the statute of limitations had intervened and the case was called for trial, plaintiffs orally moved to amend the statements by adding an allegation that the protruding rail had existed for a considerable period of time prior to February 2, 1932, and defendant should have known of the condition. Defendant pleaded surprise; a juror was withdrawn and the case continued. Shortly thereafter, on written petitions filed by plaintiffs to amend the statements, the amendment was allowed by formal order of the court. Defendant contends that this was error, that therefore all the evidence introduced at the trial to show the prior existence of the defect in the rail was improperly admitted, and that if such evidence had been excluded no liability was established by plaintiff's case. It appears, however, that no exception was taken by defendant to the allowance of the amendment, and it became, for all intents and purposes, as much a part of the statements as if originally embodied therein. Moreover, the statements of claim as filed alleged that defendant was negligent in "maintaining . . . a dangerous nuisance by allowing its trolley rails to protrude," etc., and since the words "maintaining a nuisance" involve the idea of continuity and some degree of permanence (*Ford v. Grand Union Co.*, 240 N. Y. App. Div. 294), it might be said that the original statements were not demurrable but merely subject to a rule for a more specific pleading.

Defendant urges that plaintiffs were guilty of contributory negligence as a matter of law. In our opinion, however, this question was for the jury. It cannot be said that in attempting to bring his car out of the track space Culver, had he looked, must have seen the depression in the bricks immediately adjacent to the rail. The right wheels had never been within the track, and the passage of the left wheels across the rail had to be at an oblique angle. Considering that the turn to the right in front of the Ford car necessarily absorbed his attention,

510

it cannot be asserted with finality that he was careless in not observing the defect or, observing it, in not realizing the inability of the wheel to clear it with safety.

The issues as to negligence and contributory negligence being, therefore, for the jury, defendant's motions for judgment n. o. v. were properly overruled.

Several reasons were advanced by defendant in support of its rules for a new trial.

It contended that the two suits should not have been tried together; but this was a matter for the discretion of the trial judge: *Azinger v. Pennsylvania R. R. Co.*, 262 Pa. 242.

When the jury returned its verdict, the judge who had presided at the trial was absent, and the verdict was received by President Judge IOBST. Defendant complains that this violated its constitutional right to trial by jury "as heretofore," and places reliance upon the case of *Commonwealth v. Claney*, 113 Pa. Superior Ct. 439. Apart from the fact that the record does not disclose that any objection or exception was taken by defendant at the time, the present situation is quite different from that in the *Claney* case, where one judge presided while the testimony was being taken and another delivered the charge. In the absence of special circumstances, the mere recording of a verdict is ordinarily of clerical rather than judicial import.

The learned trial judge instructed the jury that, if their verdict be for plaintiffs, they should make a special finding stating "exactly what you find the negligence to be." When the jury rendered its verdict it made no such finding and Judge IOBST refused a request that it be insisted upon. Defendant claims that this was error. The so-called special finding, however, as framed by the trial judge, was not really a special finding at all; there was only one possible basis of liability submitted to the jury, and therefore no need of their stating of what they found the negligence to consist. Even, however, if it be regarded as a special finding, the jury could not have

been compelled to return it: *Chambers v. Davis,* 3 Wharton 40, 47; *Patterson v. Kountz,* 63 Pa. 246, 252; Von Moschzisker, Trial by Jury, section 340; article by Mr. Justice Linn in *Temple Law Quarterly,* Vol. 4, No. 1, p. 6.

Turning now to plaintiffs' appeal from the granting of a new trial, we are not unmindful of the well established rule that such an order is not reviewable unless the court below makes it clearly appear that the reasons particularly set forth in its opinion are the only ones which moved it to award the new trial: *Regan v. Davis,* 290 Pa. 167, 169; *Marko v. Mendelowski,* 313 Pa. 46. In the present case the court below said: "While there are filed many reasons in support of the motions for judgment n. o. v. and for new trial, we find, after most careful examination of the record, that few of them have any merit, in fact, it is *only* those directed at the excessiveness of this verdict that impress us as having real merit." This is equivalent to a statement that in the opinion of the court there was no "real" merit in any of the reasons alleged except the excessiveness of the verdict, and it necessarily follows that for that reason *alone* the new trial was granted.[3]

As far as excessiveness of the verdicts is concerned, it would serve no useful purpose to discuss that question at this time. Assuming that the court below is justified in believing that the verdicts were excessive, three methods of procedure are pointed out in *Thirkell v. Equitable Gas Company,* 307 Pa. 377, 384, as within the power of

---

[3] It is true that in a subsequent part of its opinion the court states: "And further, from an examination of the record, we feel that testimony relative to the condition of the rails of the defendant company at the point this accident occurred, which was not strictly admissible under the pleadings, was permitted to go to the jury." We have already discussed this matter, however, and have pointed out that the amendment had properly become a part of the statements of claim and therefore the evidence here referred to was admissible.

this court:—either to "reverse the judgment and award a new venire" (which is obviously inapplicable here because the court below has itself granted a new trial), or "reverse the judgment and ourselves enter such a judgment as the court below should have entered," or "vacate the judgment and remit the record for further proceedings consistent with the opinion of this court." We think that the court below should, at least in the first instance, determine the amounts of the remittiturs to be filed. There are circumstances in the present case which would make it inequitable to plaintiffs if, merely because of excessiveness of verdicts, they should be obliged to have their case retried. After the new trial was awarded defendant became involved in reorganization proceedings in the federal court under section 77 (b) of the Bankruptcy Act, and the rights which plaintiffs have acquired by liquidation of their claims might be seriously impaired if the verdicts were now set aside. Moreover, Culver's physical condition is apparently such that the ordeal of a new trial would probably be a great hardship. We think, therefore, that justice will best be served by reversing the order for a new trial and remitting the record to the court below for it to fix, as to each of the plaintiffs, the amount of remittiturs to be filed as the alternative to granting a new trial. In establishing such amounts, the court below will, of course, have due regard to the undoubted seriousness of the injuries sustained by plaintiffs, especially in the case of Albert E. Culver himself.

The order of the court discharging defendant's motions for judgment n. o. v. is affirmed; the order making defendant's rules for a new trial absolute is reversed, and the record is remitted to the court below with instructions to determine as to each of the plaintiffs the amount of the remittitur which in its opinion should be filed by them as the alternative to the granting of a new trial.