590 A.2d 31

**Geraldine HICKS and Arthur Hicks**

**v.**

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and City of Philadelphia and Commonwealth of Pennsylvania, Department of Transportation.**

**Appeal of SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided April 9, 1991.

Reargument Denied June 3, 1991.

Petition for Allowance of Appeal Denied Oct. 31, 1991.

Joan A. Zubras, Philadelphia, for appellant.

Brian K. Wiley, Deputy Atty. Gen., with him, Ernest D. Preate, Jr., Atty. Gen., for appellee.

Before PALLADINO and KELLEY, JJ., and CRUMLISH, Jr., Senior Judge.

PALLADINO, Judge.

The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the preliminary objection of the Commonwealth of Pennsylvania, Department of Transportation (DOT) and dismissing all claims and crossclaims against DOT. We reverse.

The underlying action is a claim for damages resulting from personal injuries suffered by Geraldine Hicks (Hicks) on October 9, 1987, when "she was caused to fall because of an unsafe and defective condition; to wit, a depression below a trolley track between the two rails ..." in the 5500 block of Wayne Avenue in Philadelphia, Pennsylvania. Paragraph 5 of Complaint. Hicks alleged that the defendants, SEPTA, DOT, and the City of Philadelphia (City) individually and/or jointly owned, possessed, controlled, and maintained the area where her accident occurred. SEPTA filed an answer and new matter denying that it was responsible for the maintenance of the pavement between the rails and raising the defense of immunity. SEPTA also alleged that the City was responsible for the maintenance of the pavement under an agreement between the City and SEPTA, under City ordinances, and by the City's conduct between 1968 and 1984. SEPTA joined DOT and the City as additional defendants, alleging they alone were jointly and severally liable to Hicks.

DOT filed a preliminary objection in the nature of a demurrer, to the Hicks' complaint, asserting that DOT was not responsible for the maintenance or repair of street trolley track rails at the site of the accident, nor the roadway between the rails or within 18 inches of the outermost rail. DOT filed no response to SEPTA's new matter adding DOT as an additional defendant. SEPTA filed an answer to the preliminary objection. Following a hearing, the trial court sustained the preliminary objection and dismissed DOT from the case. This appeal followed.

On appeal to this court SEPTA raises the following issues: (1) did the trial court err in concluding that DOT

had no legal responsibility for maintaining the pavement between the trolley tracks and the area within 18 inches of the outermost trolley rail; (2) did the trial court err by not considering SEPTA's status as a commonwealth agency; and (3) did the trial court err in sustaining the preliminary objection because there are material unresolved factual questions.

Before we address the issues raised by SEPTA, we need to determine the effect of the trial court's order on the status of DOT in this action. DOT only filed a preliminary objection to the complaint filed by Hicks, and technically, DOT could only be dismissed as a defendant in the primary action, and not as an additional defendant in the action by SEPTA against DOT. Pa.R.C.P. No. 2255(a) states that:

> The procedure, including pleadings, between the party joining an additional defendant and the additional defendant shall be the same as though the party joining the additional defendant were a plaintiff and the additional defendant were a defendant.

Under this rule, in order for DOT to be dismissed completely from this action DOT would have been required to file preliminary objections to SEPTA's new matter adding DOT as an additional defendant. However, it is clear from the pleadings, legal memoranda, and the trial court's order,[1] that the understanding of all parties was that DOT was objecting to its status as a party, both as a defendant and as an additional defendant, and that the trial court treated DOT's preliminary objection as such by its order dismissing DOT as a party. Accordingly, in the interests of judicial

1. The trial court order dismissed "all claims and crossclaims against the Commonwealth Party...." The term "crossclaim" is neither used nor defined in the Pennsylvania rules of civil procedure. Black's Law Dictionary 338 (5th ed. 1979) defines a cross-claim as "any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim...." Cross-claims are litigated between parties on the same side of the main litigation while counterclaims are litigated between opposing parties to the main action. *Id.* Using this definition, SEPTA's new matter claim against DOT as an additional defendant would be a cross-claim.

economy, we shall address the issues raised by SEPTA in the same procedural posture.

In determining whether to sustain a preliminary objection in the nature of a demurrer, all well-pleaded facts and all inferences that may be deduced therefrom, but not conclusions of law, must be accepted as true. *County of Allegheny v. Dominijanni,* 109 Pa.Commonwealth Ct. 484, 531 A.2d 562 (1987). A demurrer will not be sustained unless it is clear on the face of the pleading that the law will not permit recovery. *Hawkins v. City of Harrisburg,* 120 Pa.Commonwealth Ct. 369, 548 A.2d 399 (1988).

On the first issue, SEPTA argues that because DOT has the statutory duty "[t]o mark, build, rebuild, relocate, fix the width of, construct, repair, and maintain State designated highways and transportation facilities and rights of way"[2] and "[t]o superintend, supervise and control the work of construction, reconstructing, maintaining and repairing State designated highways, and other transportation facilities and rights of way,"[3] DOT is liable for maintaining and repairing the site of the accident in this action.

DOT does not dispute that Wayne Avenue is a state designated highway, but rather argues that the statute which designated Wayne Avenue as a state highway contained limitations which preclude it from liability in this case. DOT argues further that the common law of this commonwealth also protects it from liability.

Sections 203 and 204 of what is commonly known as the State Highway Act of 1961 (Highway Act), Act of September 18, 1961, P.L. 1389, *as amended,* 36 P.S. §§ 1758–203 to 1758–204, set forth the obligations and duties of DOT with respect to streets which the Highway Act added to the state highway system, including the street in question in this action. These sections read as follows:

**2.** Section 2002(a)(8) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 512(a)(8).

**3.** Section 2002(a)(11) of The Administrative Code of 1929, 71 P.S. § 512(a)(11).

### § 1758–203. Duties, Obligations, authority of state, cities

This act is not intended and shall not be construed:

(1) To place upon the Commonwealth any duty to regulate traffic or police the streets herein taken over by the Commonwealth but such duty shall be and remain the obligation of the cities.

(2) To place upon the Commonwealth any obligation for the maintenance, construction, reconstruction or resurfacing of said streets other than the base or surface courses.

(3) *To place upon the Commonwealth any obligation under any franchise or franchises heretofore or hereafter granted by the city to any public utility company nor to transfer to the Commonwealth from the city any rights under any such franchise or franchises heretofore granted.*

(4) To place upon the Department of Highways any authority to regulate traffic, parking or the general use by the traveling public of the streets or sections thereof taken over by this Commonwealth for maintenance or improvement under the provisions of this act. However, the Department of Highways shall be and is hereby authorized to close to traffic all of the streets or sections thereof described in section 202 of this act during such time as improvements are being made thereon and in such case the city shall establish and maintain a suitable detour in accordance with the provisions of section 209 of this act.

### § 1758–204. Maintenance and construction; costs, sharing

After the streets described in section 202 of this act shall have been taken over by the Commonwealth they shall be maintained, constructed, reconstructed and resurfaced by the Department of Highways at the expense of the Commonwealth and such construction, reconstruction and resurfacing shall be of such type as shall be determined by the Secretary of Highways, with the approval of the Governor, and repairs and maintenance shall be of such

type as shall be determined by the Secretary of Highways. The obligation of the Commonwealth in the reconstruction, resurfacing or maintenance as hereinbefore provided shall be limited to that part of the street or section thereof between curb lines as established at the time of passage of this act, *but shall not include the portions of such streets which are or may be used and occupied by the structures or surface facilities of any public utility company.* It shall, nevertheless, be lawful for the Department of Highways to enter into agreements, in the discretion of the Secretary of Highways, with the city or with persons, associations or corporations for the sharing with the Commonwealth of the cost of construction, reconstruction or resurfacing of the streets or sections thereof taken over by the Commonwealth under this act.

(Footnotes omitted.)  (Emphasis added.)

In addition to these two sections of the Highway Act, section 550 of the Highway Act, 36 P.S. § 1758–550,[4] also relates to the issue of DOT's duty.  This section reads as follows:

### § 1758–550.  Authority to alter responsibility

Notwithstanding the provisions of Articles I through V, pertaining to construction, reconstruction, maintenance and resurfacing of the highways and bridges enumerated therein, the Secretary of Transportation shall have authority to enter into agreements with any political subdivision to alter the respective responsibilities of the Department of Transportation and the municipality for construction, reconstruction, maintenance and resurfacing.

■ These provisions of the Highway Act are more restrictive of DOT's authority to act than those contained in the Administrative Code, previously cited.  Accordingly, under our rules of statutory construction,[5] these more spe-

4.  Added by Section 2 of the Act of July 3, 1985, P.L. 159.

5.  The applicable rule of construction is set forth in 1 Pa.C.S. § 1933 which reads as follows:

cific and restrictive provisions are controlling. Under these provisions, DOT did not assume responsibility for maintaining those portions of the streets which were used, *or in the future could be used,* by any structure or surface facility of any public utility company. At the time DOT took over the street in question, SEPTA's predecessor, a public utility, was operating the transportation system and using the tracks in question. Under the common law, this public utility was responsible for maintaining the portions of the street occupied by its right of way and facilities. *Culver v. Lehigh Valley Transit Co.,* 322 Pa. 503, 186 A. 70 (1936). The transfer of these facilities to SEPTA neither alters the possibility that the facilities may in the future be used by a public utility company, nor abrogates the common law relating to maintenance responsibilities of these public utility transportation companies.

In addition, under section 203(3) of the Highway Act, DOT assumed no obligation under any franchise granted to a public utility. As a result, any obligation that the City may have had to SEPTA's predecessor was not assumed by DOT when the legislature added the street to the state highway system. Even though a public utility may cease to exist or to operate a transportation service, this possibility does not automatically enlarge the obligations of DOT to maintain the roadway. Accordingly, under the Highway Act and the common law, absent a contract between DOT and either SEPTA or the City, DOT has no responsibility for maintenance of the pavement at the site of the accident.

With regard to the second issue, SEPTA argues however, that these statutory provisions, and the common law applicable to private railroads which were public utilities, are not

**§ 1933. Particular controls general**
Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

applicable because SEPTA is not a public utility, but rather a public authority exercising a public duty. SEPTA alleges that the statute under which it was created placed the duty on DOT and/or the City to maintain the accident site. The following sections of the Pennsylvania Urban Mass Transportation Law (PUMTL)[6] are relevant to this discussion:

§ 600.202   **Definitions**

The following terms, whenever used or referred to in this article, shall have the following meanings, except in those instances where the context clearly indicates a different meaning:

. . . .

"**Capital Project**" shall mean and include any system of public passenger or public passenger and rail transportation, including but not limited to any railway, street railway, subway, elevated and monorail passenger or passenger and rail rolling stock, including ... rails, tracks, roadbeds ... used in connection with public passenger or public passenger and rail transportation systems ... and rights-of-way for any thereof (but not for public highways) ... necessary or desirable for the construction, operation or improvement of the ... system involve, or any improvement of or equipment or furnishings for any of the foregoing....

§ 600.203.   **Program authorizations**

The department [DOT] is hereby authorized, within the limitations hereinafter provided ...

. . . .

(4) In connection with privately or locally assisted capital projects or capital projects financed with private or local and Federal funds, to make grants for ... the acquisition, construction, reconstruction, and improvement of facilities and equipment, buses and other rolling stock, and other real or personal property, including land (but not

6. Act of January 22, 1968, P.L. 42, *as amended,* added by the Act of July 10, 1980, P.L. 427, *as amended,* 55 P.S. §§ 600.101–600.407.

public highways), needed for an efficient and coordinated mass transportation system ... No capital project grant shall be made for the purpose of financing, directly or indirectly, the acquisition of any interest in, or their purchase of any facilities or other property of, a private urban common carrier mass transportation company....

§ 600.302. Definitions

(a) The following terms, whenever used or referred to in this article, shall have the following meanings, except in those instances where the context clearly indicates otherwise:

. . . .

**"Transportation system"** shall mean all property, real and personal useful for the transportation of passengers for hire, including but not limited to power plants, substations, terminals, garages, bridges, tunnels, subways, elevated lines, monorails, railroad motive power, trains, railroad passenger cars and equipment, belt conveyors, inclines, car barns, street cars, buses, rails, lines, poles, wires, stations, off-street parking facilities rights-of-way, as well as the franchises, rights and licenses therefor, including rights to provide group and party services: Provided, That such term shall not include taxicabs.

§ 600.303. Creation of transportation authorities; rights and powers

. . . .

(d) A duly certified authority shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights or powers:

. . . .

(5) To acquire, purchase, hold, lease as lessee and use any franchise, property, real, personal or mixed, tangible or intangible, or any interest therein necessary, or desirable

for carrying out the purposes of the authority, and to sell, lease as lessor, transfer and dispose of any property, or interest therein, at any time acquired by it....

(6) To acquire by purchase, lease, or otherwise, and to construct, improve, maintain, repair and operate passenger transportation facilities.

. . . .

(21) Private rights and property in the beds of existing public highways vacated in order to facilitate the purpose of the authority shall not be deemed destroyed or ousted by such vacation, but shall be acquired or relocated by the authority in the same manner as other property.

(22) To have the right to use any public road, street, way, highway, bridge or tunnel for the operation of a transportation system with the metropolitan area....

### § 600.310. Use of ways occupied by other passenger utilities

The authority shall not have the right to use any street or public way, presently occupied by a public utility engaged in local passenger transportation, for a competing purpose, without the agreement of such public utility.

### § 600.332. Contracts, procurement and sale of property; concessions; advertisement; bidding

(a) Except in the purchase of unique articles ... competitive bids shall be secured before any purchase of sale, by contract or otherwise is made or before any contract is awarded for construction, alterations, supplies, equipment, repairs or maintenance or for rendering any services to the authority other than professional services; and the purchase shall be made from or the contract shall be awarded to the lowest responsible bidder....

### § 600.336. Transfer of records by public utility commission

In case the authority acquired the plant, equipment, property and rights in property of any public utility used or useful in the operation of a transportation system, the Pennsylvania Public Utility Commission shall transfer

and deliver to the board, upon its demand, in writing, all books, papers and records in control of said commission affecting such public utility exclusively.

■ SEPTA argues first that it is not in the business of paving highways, and as a result is not responsible for the pavement surrounding its rails. While SEPTA is correct that it is not in the business of paving highways, PUMTL mandates that SEPTA acquire the "private rights and property in the beds of existing public highways ..." 55 P.S. § 600.303(d)(21), and that SEPTA maintain that property when it is part of the transportation facilities which it operates. Because SEPTA's predecessor was responsible for maintaining the pavement between the rails, SEPTA assumed this duty when it acquired the property pursuant to this mandate in PUMTL.

■ SEPTA argues further that because the acquisition, construction, and reconstruction of public highways is excluded from the definition of capital projects which can be funded by grants received from DOT, DOT has assumed responsibility for maintaining those portions of the street between SEPTA's rails and within 18 inches of the outermost rail. The language cited by SEPTA which it claims exempts it from repairing public highways, 55 P.S. § 600.-203(4), does not place the burden of repair on DOT but merely prohibits the use of grants made by DOT to SEPTA for acquiring land which has been designated a public highway. This language does not prohibit SEPTA from using these funds to maintain its property or prevent SEPTA from using other funds for this purpose.

■ However, as set forth more fully above, DOT never acquired the land between the rails or within 18 inches of the outermost rail. SEPTA's argument is based upon this incorrect assumption. Nothing contained in the statute under which SEPTA was created and organized abrogates the common law requirement that a transportation company maintain its facilities. *Culver.*

Furthermore, PUMTL, rather than granting limited powers to SEPTA, grants very broad powers to SEPTA to contract with others to perform the duties which with its own employees it does not have the ability to perform. In reality, PUMTL is a statute which creates a special kind of corporation, to perform a necessary and essential service that the legislature has found can no longer be performed by private enterprise. While the purpose of this corporation/authority may be severely limited, the legislature has granted these corporations powers not available to companies organized under the general corporation statutes.

The final issue which we must address is whether there are material unresolved factual questions that bar sustaining the demurrer. The complaint alleges that DOT possessed, controlled, and maintained the area where the accident occurred. While the Highway Act did not mandate that DOT assume responsibility for maintaining the accident site, it does permit DOT to contract to perform this duty. As a result, it is not clear from the face of the pleadings that DOT is not liable for damages, and the trial court erred is sustaining DOT's preliminary objection.

Accordingly, the order of the trial court is reversed.

## ORDER

AND NOW, April 9, 1991, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed and this matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.